PAUL TAVEL, as Executor & Trustee of the Estate of CAMILLE GUERIN, deceased, v. ADELE G. GUERIN, Appellee.

160 So. 665.

Division B.

Opinion Filed April 4, 1935.

*Dickinson & Dickinson,* for Appellant;

*William N. Ellis,* for Appellee.

BUFORD, J.—Camille Guerin died in Orange County, Florida, on May 27th, 1933, while a resident of that county. He left a will which was duly probated on June 1st, 1933. One Paul Tavel was named as Executor and Trustee under the will and he qualified as such. The wife of deceased was Adele C. Guerin. When the will was executed by the tes-

tator there was appended thereto a statement, which was signed by the wife in the following language:

"I, Adele C. Guerin, wife of the above named testator, Camille Guerin, being fully advised as to my rights concerning the property of my said husband in case he dies before I do and the above will goes into effect and as to my rights under the laws of descent and distribution of the State of Florida, do hereby consent to the terms and provisions of the foregoing will of my said husband and accept the same.

"ADELE C. GUERIN."

Under the terms of the will Adele C. Guerin, wife of testator, was a beneficiary. About five months after the death of the testator the widow dissented from the will and filed her election to take a child's part of the estate under the laws of Florida, and, at the same time, tendered to the Executor-Trustee the return of certain sums of money which she had theretofore received from the Executor-Trustee under the terms of the will.

The Executor-Trustee declined to recognize the widow's right to renounce and dissent from the terms of the will and to take a child's part of the estate. On the 23rd day of November, 1933, the widow exhibited her bill of complaint in the Circuit Court of Orange County. The bill alleged in effect that the complainant was the wife of Camille Guerin during his lifetime and was living with him as such at the time of his death. (2nd) That the last will and testament of the deceased, Guerin, had been admitted to probate in Orange County on June 1st, 1933, and that Paul Tavel was designated and qualified as Executor-Trustee of the estate. (3rd) That the provisions of the will were not fully satisfactory to the complainant; that she had signified her dissent thereto by her sworn statement in writing duly filed in

the office of the Probate Court in and for Orange County on October 9th, 1933, and that she thereby elected to take a child's part in said estate. (4th) That the Executor-Trustee declined and refused to set apart for her a child's part of the estate unless and until ordered to do so by a court of competent jurisdiction. (5th) That a copy of the inventory of the estate was attached ·to the bill of complaint; that there were no surviving children of the testator decedent and the complainant claimed a fee simple title in one-half of the real property and an absolute title to one-half of the personal property. (6th) That under the terms of the will the complainant was entitled to receive the sum of $350.00 per month during her lifetime and that on November 4, 1933, the Executor-Trustee of the estate delivered to her a check in the sum of $350.00 which would have been due her for the month of November if she had not elected to renounce the will and take a child's part of the estate. That she inadvertently endorsed and cashed the check but she did not dispose of the money and within a few days thereafter offered to return the sum of money to the Executor-Trustee, but he refused the same. She tendered the money into the court and also tendered the court certain monies which she had received as rents. She offered to do equity as the court might direct. She alleged that she is dependent on the income from the estate to provide herself with the necessities of life.

Answer and amended answer were filed. The complainant moved to strike certain portions of the amended answer as follows:

"From paragraph numbered three (3) on page one (1) of the said amended answer this complainant moves to strike the following phrases: Beginning at line three (3) of said paragraph three (3), 'and says that in truth and in fact that

the provisions made in said Last Will and Testament of the said Camille Guerin were fully satisfactory to her, and that the said plaintiff caused and procured the said Camille Guerin to make said Last Will and Testament, and was fully and completely familiar with the terms and conditions and contents thereof, and voluntarily subscribed simultaneously with the execution of said will at the bottom thereof and below the signature of the witnesses the following:'

"This complainant also moves to strike from paragraph three (3) of the said Amended Answer all of page two (2) thereof and the next succeeding fifty-three (53) pages down to the last paragraph beginning on the fourth (4th) from the last page of the said Amended Answer."

On hearing, the court entered an order, as follows, in part:

"Ordered, Adjudged and Decreed: That the said motion be and the same is hereby granted, and the following portions of the said Amended Answer be and the same are hereby stricken, to-wit:

"Beginning at line three (3) of said paragraph three (3), 'and says that in truth and in fact that the provisions made in said Last Will and Testament of the said Camille Guerin were fully satisfactory to her, and that the said plaintiff caused and procured the said Camille Guerin to make said Last Will and Testament, and was fully and completely familiar with the terms and conditions and contents thereof, and voluntarily subscribed simultaneously with the execution of said Will at the bottom thereof and below the signatures of the witness the following:' And also the following:

"From paragraph three (3) of the said Amended Answer all of page two (2) thereof and the next succeeding fifty-three (53) pages down to the last paragraph beginning on

the fourth (4th) from the last page of the said Amended Answer."

The effect of the order was to strike from the answer the allegation that complainant caused and procured the testator to make the said will and was familiar with the terms thereof and voluntarily accepted the terms of the will at the time the will was made and also the allegation that Camille Guerin was at the time of his death 82 years of age and that the complainant is 80 years of age; that a peculiar relationship began between the deceased and the complainant many years ago when deceased was then married to his second wife; that after the death of his second wife complainant and deceased were married on February 5, 1930; that prior to their marriage complainant had resided with deceased as his companion or servant, or in some other capacity; that the parties were both born in France and have no relatives in this country and that deceased accumulated all this property prior to his marriage with the complainant. That prior to his marriage with complainant, Geurin had disposed of his property by a trust deed to State Bank of Orlando and Trust Company; that the trust deed had been revoked.

The stricken part of the answer contains a great number of pages constituting copies of the trust deed and supplements to the trust deed and partial revocation thereof.

From the order striking parts of the answer this appeal is taken.

Appellant states three questions, which, he says, are to be determined by this Court. They are as follows:

1. "An aged married man having placed all of his property, consisting almost entirely of personal property, in trust, amply providing for his wife for her lifetime and distributing same through the trust after his death, can the widow,

who afterwards procures him to make a will which she signed at the bottom following Testator's execution reciting that she has been fully advised of her rights in the property of her husband and stated that she consents to the terms of the will and accepts same, and which will is made on consideration of his revoking the prior trusts and which trusts were revoked in pursuance thereof simultaneously with the taking effect of the will on the death of the testator, and the will giving to the widow more than she would get under the trust, and also the will making some changes in the beneficiaries under the will different from the trust, after the death of her husband renounce the will and elect to take a child's part?

2. "Can a widow under the circumstances stated in the first question involved be heard in a court of equity to have a child's part set aside to her out of her deceased husband's estate so long as she receives the benefits under the will without returning them into the estate, whether such benefits are received voluntarily by her or under the guise of a court order procured by her to relieve her of any apparent voluntariness?

3. "Has the Executor of the estate of a deceased any legal right under the laws of the State of Florida to contest the right of a widow to dissent from the terms of her husband's will in which she seeks to take a child's part in the estate of her deceased husband?"

We may dispose of the third question first by saying that no such question is presented here. There is nothing in the record to show that the court below has held that the Executor of an estate may not contest the right of the widow to dissent from the terms of her huband's will.

This case is controlled by the law as it existed in this State prior to the effective date of Chapter 16103, Acts of

1933, known as the 1933 Probate Act. Therefore, the provisions of that Act are not involved here.

It is contended that by signing the statement appended to the Last Will and Testament hereinbefore quoted, the complainant irrevocably accepted the terms of the Will; or that by the signing of that stipulation she is estopped from exercising her right under the law to dissent from the will and elect to take a child's part of the estate. We think the position is not tenable.

When that statement was signed the complainant was a married woman and was precluded from entering into any binding contract. It is not alleged that there was any consideration for her signing that stipulation and, for all the record shows, the terms of the will were entirely satisfactory to her at that time, but she did not by signing that stipulation waive or renounce her right to exercise her own judgment and pleasure with reference to accepting the terms of the will or dissenting therefrom within twelve months after the probate thereof.

It is contended that the stricken portions of the answer are sufficient to show that the complainant procured the making of the will. The allegations are vague and indefinite but since she is not seeking to claim under the will, it appears to us that it is immaterial whether she procured the testator to make the will or not.

Section 3629 R. G. S., 5493 C. G. L., provides dower in lands. Section 3630 R. G. S., 5494, C. G. L., provides for dower in personal property. Section 3631 R. G. S., 5495 C. G. L., provides for a widow to elect to take dower instead of the whole estate and Section 3632 R. G. S., 5496 C. G. L., provides for the widow's election to take a child's part in lieu of dower. Paragraph 2 of that section provides:

"2. Time of. Such election shall be made within twelve months after the probate of the will or granting letters of administration or she shall be confined to her dower."

Paragraph 3 of that section provides:

"3. "Effect of the Election.—If a widow take dower she shall be entitled only to a life estate in the real property, to return at her death to the estate of her deceased husband for distribution; if she takes a child's part, she shall have in the property set apart to her a fee simple estate in the real property, and an absolute right to the personal property set apart to her, with power to control or dispose of the same by will, deed or otherwise."

In Benedict v. Wilmarth, 46 Fla. 539, 35 Sou. 84, it was held:

"A widow by qualifying as executrix of her husband's will, and by uniting with her co-executor in foreclosing mortgages of her husband's estate, and in buying in the property for the use of the estate, and who has done no other act as executrix which would make it impracticable for her to repudiate the will without prejudice to the rights of others, is not thereby estopped from electing within twelve months to take dower or a child's part in the estate of the deceased husband.

"If, under the circumstances, stated in the above headnote, a widow elects to take a child's part in her husband's estate, her statutory rights in the estate of her husband are superior to those of legatees under the will.

"If, under the circumstances stated in the first headnote, a widow elects to take a child's part in her husband's estate, she takes a child's part subject to the debts of the estate and the cost of administration up to and including the point of actual distribution.

"If, under the circumstances stated in the first headnote,

a widow elects to take a child's part in her deceased husband's estate, and there is one child and heir of such deceased husband, the widow is counted as a child, and she will be entitled to one-half of the estate, after the payment of the costs of administration, as stated in the foregoing headnotes."

In Merchants' Nat. Bank of Mobile, *et al.,* v. Hubbard, *et al.,* 222 Fla. 518, 133 Sou. 723, the will of Ashbel Hubbard had been probated with the consent in writing of the widow, Debe Williams Hubbard, and it was alleged in cross bill filed by one of the beneficiaries that the widow was estopped to dissent from the will because she had agreed during the life of testator to the provisions of the will and the codicil as executed.

In that case Mr. Justice FOSTER reviewed numerous authorities, the Court held:

3. "Wife's agreement, during coverture, not to dissent from husband's will, is virtually agreement to forego dower and distributive share in consideration of provisions of will (Code 1923, No. 10593)."

4. "Widow's contract, during or before coverture, to release dower and distributive share, is enforceable in equity when founded on adequate consideration, fair, reasonable, equal in all terms, and mutual in operation and effect (Code 1923 No. 10593)."

5. "Court should not declare estoppel against widow to dissent from will, though widow, in husband's lifetime, acquiesced therein, when provision falls short of adequacy of consideration and circumstances would not justify specific performance of a contract (Code 1923, No. 10593)."

6. "Estoppel cannot operate against party under circumstances not sustaining contract."

7. "Party cannot be estopped *in pais when* unable to bind himself by contract."

8. "In transactions between husband and wife during lifetime, husband is presumed dominant party."

9. "Burden is upon husband or representatives to show fairness and adequacy of provision for wife to estop her from dissenting from will by reason of agreement during lifetime (Code 1923, No. 1059)."

10. "To prevent wife from dissenting by reason of acquiescence to provisions of will, consideration must be adequate, and entire transaction fair and equitable from wife's view, or freely and voluntarily entered into with competent independent advice and full knowledge of wife's interest in estate and its approximate value (Code 1923, No. 10593)."

And also held:

"We have now reached the question of whether the widow after her husband died, effectually elected not to dissent prior to the time of filing her dissent in the probate court. On that subject we find that the rules are settled with more or less clearness and certainty. An election does not result from the circumstance that the widow files the will for probate, even if she receives letters testamentary under its terms and proceeds with the administration of the estate; nor from the circumstance that she stated that certain legatees would receive something under it, nor from a bare acquiescence without a full and deliberate and intelligent choice; nor by a mere intention not to do so, as expressed in compensation or by declaration. Eastburn v. Canizas, 193 Ala. 574, 69 So. 459; Reaves v. Garrett's Adm'r, 34 Ala. 558; Adams v. Adams, 39 Ala. 274.

As pointed out in Owens v. Andrews, 17 N. M. 597, 131 P. 1004, 1006, 49 L. R. A. (N. S.) 1072, and the notes, authorities agree that to contsitute an election, 'the acts

and declarations relied upon must be unequivocal and must clearly evince an intention to elect and take under the will and the choice must be made by the widow, with her full knowledge of her rights and the status of the estate,' and that 'to make the enforcement of one demand, which is inconsistent with another, a final and binding election to take that and not the other, the party must either be shown to have acted advisedly, with a proper knowledge of all the circumstances, and with a consciousness of the effect of the act relied upon, or the party adversely interested must have so changed his position in reliance upon such action that it would be inequitable to permit the party who has the choice to recede from his former action,' and that 'the principle of law precluding the revocation of an election is necessarily the doctrine of estoppel, and that there can be no estoppel when there is no injury.' *In re* Moore's Estate, 62 Cal. App. 265, 216 P. 981; Dunn v. Vinyard (Tex. Com. App.) 251 S. W. 1043.

'If she has made an election unadvisedly, she cannot avoid her choice as long as she retains that which she has received by virtue of such election. Adams v. Adams, *supra*.

"An unadvised election is upon the same basis as an election procured by fraud. It will not be of binding effect in equity, if she restores what she has received under the legacy, and others have not acted upon her election so as to be prejudiced by her dissent made thereafter. 1 Pom. on Eq. No. 515 (see page 978); Reaves v. Garrett's Adm'r., *supra;* Adams v. Adams, *supra*."

We are reminded that under the laws of the State of Alabama a married woman may make a valid contract, while, under the laws of Florida, she cannot.

In Gibson v. Gibson, 15 Mass. 105, the court had under

consideration a contract of marriage settlement, in which contract it was provided:

"And the said S. S. doth hereby, in consideration of the premises, covenant with the said N. D., trustee as aforesaid, that she will not make any claim or demand whatsoever on the estate of the said A. G. for dower, or thirds, or distributive part whatsoever, in consequence of said marriage, saving for the covenant of annuity, as aforesaid; and she doth renounce all other claim in and upon the estate of the said A. G., present or future."

In this case the court said:

"The question now to be determined is whether the indenture set forth in the second plea at bar is sufficient to preclude the recovery, by way of estoppel. It was settled in the case of Hastings v. Dickinson & Ux., cited by the counsel for the demandant, that a like indenture, or marriage settlement would be no bar of dower at common law or by the statute of 27 Hen. 8, c. 10. Nor could it operate as a release because the release of a demand not in existence is void. These points were decided upon principles which, we think, cannot be controverted. It was argued in that case, that the marriage settlement might operate by way of estoppel; but this part of the argument was not noticed by the chief justice in delivering the opinion of the Court; although we cannot suppose it escaped their observation, in making up their judgment. If that case, therefore, was rightfully determined it is sufficient to settle the present question, for it is impossible to perceive any material distinction between the two cases.

" 'Estoppel is so called,' says Lord Coke, because a man's act of acceptance stoppeth or closeth up his mouth to allege or plead the truth.' (5) And all the cases collected to illustrate the principles of estoppel will serve to show that

this may be considered as a sufficiently comprehensive definition of the term. It is a restraint, or impediment, imposed by the policy of the law, to preclude a party from averring the truth."

In Redwine's Executor, *et al.,* v. Redwine, 160 Ky. 282, it was said:

"Husband and Wife.—Contracts Between.—When Wife may Have Set Aside a Contract of Jointure.—It is indispensable to the validity of contracts like this that the utmost fairness and good faith should be observed by the husband and that the consideration moving to the wife should be of such value as to reasonably compensate her for what she agreed to surrender, and when the wife, on the verge of her husband's death, agrees to take at his death property of greatly less value than she would receive at his death if no contract had been made, the presumption is that the contract was not fairly obtained and the wife should not be bound by it."

In 19 C. J., 503, the writer says:

"An indenture on an agreement made by a wife with her husband, either before or after marriage, to release her dower in his lands is not effectual as an estoppel of her claim for dower, unless ratified by her subsequent to the husband's death."

The first question, we think, therefore, must be determined adversely to the contention of the appellant.

We do not mean to hold, however, that a married woman may not by deed executed and acknowledged according to the laws of the State of Florida relating to the release of dower effectively bind herself to such release and relinquishment of her dower rights and her rights to a distributive share in her husband's real estate or personal property.

Such release or relinquishment to be binding upon her

must be executed in the manner provided by law and without this the disabilities of coverture will preclude the binding effect of an attempted contract relinquishment of such rights.

The writing signed by the married woman during her husband's lifetime does not meet the requirements of the law as to the execution of the relinquishment of dower and, therefore, she was not bound by it.

The second question hereinbefore quoted must also be determined adversely to the appellant because it appears from the bill of complaint, and is not contraverted by the answer, that the complainant had, prior to the institution of the suit, tendered back that which she had as she alleges inadvertently received from the estate, and she made that tender good by depositing the funds so coming into her hands into the registry of the court. Her election to take a child's part and to dissent from the will was timely made under the statute. She had one year from date of the probate of the will in which to make that election. She exercised it within six months.

The order appealed from should be affirmed.

It is so ordered.

Affirmed.

ELLIS, P. J., and TERRELL, J. concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.